IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JEFFREY GLEN SMITH**, | Case No. 2:19-cv-01912-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **BRIGITTE AMSBERRY**, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Jeffrey Glen Smith ("Petitioner"), an individual in custody at the Eastern Oregon Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, alleging the ineffectiveness of trial counsel. Because Petitioner's claim is procedurally defaulted, Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 31) is DENIED, and this proceeding is DISMISSED, with prejudice.

///

# BACKGROUND

I. **Trial Court Proceedings**

On February 15, 2008, a Marion County grand jury returned an indictment charging Petitioner with ten counts of Using a Child in a Display of Sexually Explicit Conduct; five counts of Encouraging Child Sex Abuse in the First Degree; three counts of Sexual Abuse in the First Degree; and one count each of Sodomy in the Second Degree and Unlawful Sexual Penetration in the Second Degree. (Rept's Exs. (ECF No. 24), Ex. 102.) The post-conviction court detailed the circumstances giving rise to the charges as follows:[1]

> Federal law enforcement initiated a nationwide child pornography investigation in 2006. Dubbed "Project Flicker$_3$," the investigation targeted a multi-national criminal organization that operated various child pornography websites in the United States. The organization used several PayPal accounts to clandestinely collect the proceeds paid by subscribers charged a $79.95 monthly access fee for exclusive access to a member restricted child pornography website. One of these websites was called "Sexy Angels."
>
> Since a Keizer, Oregon resident named "Jeff Smith" was linked to Item ID 1000 (formerly known as Home Collection 1000: a child pornography website commercially known as Sexy Angels), the federal government provided this information to the Oregon Department of Justice (DOJ) for investigation and prosecution. DOJ corroborated that someone named "Jeff Smith" lived at 1367 Trent Avenue NE in Keizer. DOJ also obtained the subscriber information connected with a particular email address (jHusker59@aol.com) and learned that it too was registered to "Jeff Smith" at 1367 Trent Avenue NE in Keizer. Moreover, the telephone number associated with jHusker59@aol.com is the same telephone number linked to "Jeff Smith" by federal authorities: 503-304-5095. "Jeff Smith" also had an active credit card on file with AOL: the internet service provider linked with the jHusker59@aol.com email address.
>
> Since the information obtained from AOL regarding jHusker59@aol.com matched the information collected by federal authorities regarding a putative buyer of child pornography living in a corroborated location, DOJ applied for a search warrant in Marion County. Judge Prall heard from the DOJ Investigator Micah Persons directly. The warrant issued on October 30, 2007.

---

[1] In their briefing, the parties each cite to and rely on the PCR court's detailed findings of fact. The Court thus recounts those factual findings here.

On November 6, 2007 at 7:20 a.m., DOJ and Keizer police executed the search warrant at 1367 Trent Avenue NE in Keizer. There was nobody home. The affiant of the warrant (Special Agent Persons) participated in its execution, but only stayed for 15-20 minutes (post-entry) before leaving the scene to interview petitioner at his job site in Portland. Special Agent Persons (and his partner) had telephone contact with remaining officers conducing the search. Based on that contact, Special Agent Persons knew that officers found two sexually explicit photos of a young girl (later determined to be petitioner's [fourteen] year-old niece [aka adopted daughter]: hereinafter, victim) within the memory card of a digital camera found in the closet of a locked bedroom (later determined to be petitioner's bedroom). The two photos showed victim lying on a bed (face down) in an apparent sleeping position. She was wearing a t-shirt and thong underwear. Special Agent Persons did not know about any other item of incriminating evidence seized at petitioner's home before he interviewed petitioner.

The agents read petitioner his Miranda rights at 9:55 a.m. Petitioner waived those rights. The agents then read the search warrant to him. Petitioner admitted living at 1367 Trent Avenue NE in Keizer with victim (who was placed with petitioner following her mother's suicide when victim was [seven] years old). The agents confronted petitioner with the Sexy Angels transaction history and petitioner admitted that he downloaded child pornography from that website. He told agents that they should find 200 child pornography images in the "My Pictures" section of his desktop computer. He further indicated that some of these images show very small children having oral sex with adult males. Petitioner said that he knew these images were illegal when delivered to other, but not when merely possessed.

Agents asked petitioner to describe his interest in child pornography. Petitioner stated that his interest began four years ago when he searched for child pornography "out of curiosity." That curiosity developed into a fetish for girls with a "young look" described as "no hip development, little or no pubic hair and very small breasts." Petitioner said that he masturbated to these images every other day. Agents asked petitioner whether he ever touched a child in a sexual manner. Petitioner said no and added that he was "a looker, not a doer." Agents asked petitioner whether he personally took sexually explicit photos of children and petitioner denied that accusation. When confronted with the pictures found in the digital camera, petitioner admitted taking them for the purpose of showing victim when that underwear was inappropriate. Police interviewed victim at school and she denied sexual abuse and any knowledge of the photos taken by petitioner. The search warrant execution team ultimately seized the thong underwear worn by victim in the photos, the digital camera used to take those photos, two computers, CD's, DVD's and related electronic equipment.

On January 28, 2008, police inspected the evidence seized during the search warrant. One of the seized items was a CD recovered from petitioner's bedroom. The CD contained a single image of commercially obtained child pornography. Moreover, upon inspecting the deleted memory of the digital camera, agents found [twenty]dele additional images depicting petitioner's sexual abuse of victim (including penetration) on the same bedspread observed by police in the master

bedroom). Accordingly, the agents applied for (and received) a second search warrant authorizing recovery of these bedspreads. That warrant was executed o January 29, 2008 and agents recovered those items.

Upon inspection of the [twenty] deleted images that evidently showed victim's face, agents had another conversation with victim and asked her about these photos. She subsequently disclosed to law enforcement and Liberty House staff that petitioner sexually abused her for many years (between [nine and thirteen] years old). According to victim, petitioner forced her to strip naked and then subjected her to various sex acts. Her disclosure corroborated the images: petitioner put victim's hands and mouth on his penis, digitally penetrated her vagina and anus, placed his penis and mouth on her vagina, and recorded this abuse with his digital camera, including the penetration offenses. Later forensic examination of the Compaq Presario recovered from the master bedroom revealed that it had 1,416 commercially obtained images of child pornography and two child pornography videos inferentially linked to the Sexy Angels website.

(Resp't Ex. 160 at 1–3.)

Petitioner's trial attorney, Shaun S. McCrea ("McCrea"), filed motions to controvert and suppress, arguing in part that the warrant authorizing the search of Petitioner's home had been issued without probable cause, and that certain statements included in the underlying affidavit were inaccurate, untruthful, or submitted in bad faith. (Resp't Ex. 130 at 1–2.) The presiding trial judge, Ashcroft, held a hearing on the motions on July 23, 2009. (Tr. (ECF No. 25), 29–227.) In a letter opinion dated August 5, 2009, Judge Ashcroft noted that McCrea had not filed an appropriate affidavit setting forth a "'substantial basis' for questioning the good faith accuracy and truthfulness of the affiant of the subject warrant" in support of her request for an evidentiary hearing on the motion to controvert. (Resp't Ex. 137 at 1.) Judge Ashcroft, however, found the issue moot because a hearing had already occurred, and denied Petitioner's motions on the merits based on evidence received during the hearing. (*Id.* at 2; Resp't Ex. 160 at 3.)

On August 17, 2009, McCrea filed objections to the trial court's decision, requested that Judge Ashcroft restate his findings of fact with particularity, and provided additional argument in support of her previous filings. (Resp't Ex. 138; Resp't Ex. 160 at 3.) Specifically, McCrea argued

that the affiant, Special Agent Persons, had made several inaccurate, untruthful, or bad faith assertions in the underlying search warrant affidavit, including: (1) inaccurately attributing several statements to Immigration and Customs Enforcement Special Agent Matt Dunn; (2) inaccurately stating that Petitioner "was 'positively identified as a child pornography consumer in a recent nationwide undercover child pornography investigation'"; (3) inaccurately stating that the organization from which Petitioner purchased child pornography stopped using subject identifiers[2] in November 2006, instead of December 2006; (4) inaccurately stating that Petitioner had purchased access and the ability to download images from at least one child pornography website; and (5) misleadingly stating, based on his training and experience, that "the conduct of [Petitioner] is indicative of a child pornography collector." (Resp't Ex. 138.)

On October 9, 2009, Judge Ashcroft held a second hearing, receiving additional witness testimony and argument from the parties. (Tr 230–346.) He then issued a letter opinion on January 19, 2010, again denying the motions to controvert and suppress, adopting the State's proposed findings of fact and conclusions of law, and stating that he "did not find at any time that [he] could attribute untruthfulness or bad faith to the statements of the affiant when compared to the affidavit, evidence, and testimony produced at the hearing." (Resp't Ex. 140 at 1.) Notably, Judge Ashcroft expressly found Agent Persons to be credible. (*Id.*)

Shortly thereafter, Judge Ashcroft resigned from the bench. (Resp't Ex. 112 at 219.) In light of the circumstances leading to his resignation, McCrea filed a motion for reconsideration of

---

[2] "Subject identifiers" are used to identify entities associated with specific PayPal transactions. In December 2006, the organization running the child pornography website accessed by Petitioner "stopped utilizing the list of subject identifiers to identify the specific member-restricted websites associated with each purchase, and began using generic invoice numbers." (Tr. 59–60.)

Judge Ashcroft's previous findings before another Marion County judge sitting *de novo*. (Resp't Exs. 141, 160 at 3.) At a hearing on April 20, 2010, Judge Penn allowed the motion for reconsideration, and granted a continuance pending the outcome of his review. (Tr. 1–7.)

At a status conference on May 5, 2010, Judge Penn detailed his review of the motions, explaining that he had reviewed the file, the "extensive" memoranda prepared by both parties, and the transcripts of both hearings before Judge Ashcroft. (Tr. 11.) He also noted that he had reviewed the video record of both hearings to "see the testimony of the witnesses, . . . [to] hear the testimony of the defense witness by phone[,] . . . [and to] hear the closing arguments in effect of both Counsel in the October hearing." (Tr. at 11–12.) Judge Penn then denied the motions and explained his findings:

> First of all, I found on the motion to controvert, I found nothing untruthful. I did not find any bad faith. I didn't find what I considered to be inaccuracies. And so I would not end up striking anything from the affidavit. And then reviewing the affidavit itself under the motion to suppress, I do find that there's probable cause; that the search is valid, that is [the search warrant is] not over-broad.

(Tr. 13–14.) Judge Penn also concluded that Agent Persons subjectively "believed that everything [in his affidavit] was valid and was appropriate and truthful information," and that when viewed as whole, "[the information presented in the affidavit] was objectively correct and valid as well." (Tr. 13–14.) Judge Penn thus affirmed Judge Ashcroft's previous rulings, and further concluded that "the evidence obtained in this case would have inevitably been discovered had this search warrant not been executed." (Resp't Ex. 144.)

Petitioner thereafter elected to proceed to a stipulated facts trial on September 30, 2010, where he was convicted of three counts of Using a Child in a Display of Sexually Explicit Conduct, three counts of Encouraging Child Abuse in the First Degree, and one count of Sodomy in the Second Degree. (Resp't Ex. 146.) In exchange for Petitioner's agreement to the stipulated facts

trial, the State agreed to dismiss the remaining thirteen counts, and "to cap petitioner's aggregate sentencing exposure at [forty] years" for his convictions in the instant case and for his conviction in a separate case involving the sexual abuse of the victim's minor friend. (Resp't Ex. 147; Resp't Ex. 160 at 4.)

## II. Direct Appeal

Petitioner appealed, asserting two assignments of error, as follows:

> FIRST ASSIGNMENT OF ERROR: The trial court erred when it denied defendant's motion to suppress the evidence.
>
> SECOND ASSIGNMENT OF ERROR: The trial court erred when it denied defendant's motion to controvert the affidavit and motion to suppress the evidence.

(Resp't Ex. 103 at 2–3.) Petitioner also filed a supplemental brief *pro se*, setting forth two additional assignments of error:

> FIRST ASSIGNMENT OF ERROR: The trial court erred by denying the defendant's motion to controvert when the inaccuracies required to grant the motion were clear and on the record and, by then not granting the defendant's motion to suppress due to lack of probable cause when viewing the excised affidavit.
>
> SECOND ASSIGNMENT OF ERROR: The trial court erred when it ordered and adjudged that the evidence obtained in this case would have inevitably been discovered had the search warrant not been executed.

(Resp't Ex. 104A at 2.) Petitioner later filed a second supplemental brief with the help of counsel, asserting one additional assignment of error, as follows:

> SUPPLEMENTAL THIRD ASSIGNMENT OF ERROR: The trial court erred by conducting a bench trial on stipulated facts without obtaining a written jury trial waiver from defendant.

(Resp't Ex. 104B at 2.)

In a written opinion, the Oregon Court of Appeals reversed and remanded, finding that the trial court had erred in proceeding with a trial on stipulated facts without first obtaining a written waiver of Petitioner's right to a jury trial. *State v. Smith*, 260 Or. App. 183, 185, 316 P.3d 387, 388 (2013). In a footnote, the Oregon Court of Appeals expressly rejected Petitioner's other

PAGE 7 – OPINION AND ORDER

assignments of error, "including the [trial] court's denial of his motion to suppress and its denial of his motion to controvert a search-warrant affidavit[,]" without discussion. *Id.* at 185 n.1. The parties cross-appealed, and the Oregon Supreme Court denied review. (Resp't Exs. 107, 108, 109.)

### III. Second Trial Court Proceedings

Following remand, McCrea withdrew as counsel, and the trial court appointed attorney Suzanne Taylor ("Taylor") to represent Petitioner in the remand proceedings. (Resp't Exs. 150, 151, 152.) Petitioner thereafter entered plea negotiations with the State, and ultimately pleaded guilty to the same charges for which he previously had been convicted. (Resp't Ex. 111; Tr. 358–69.) In exchange for Petitioner's guilty pleas, the State agreed to recommend a custodial term of 240 rather than 405 months as previously recommended. (Tr. 359.) After a colloquy in which Petitioner affirmed the knowing, voluntary, and intelligent nature of his pleas, the trial court accepted Petitioner's guilty pleas and imposed the recommended sentence. (Tr. 352–64.)

### IV. Post-Conviction Proceedings

Petitioner did not pursue a direct appeal from his remand judgments, but filed a petition for post-conviction relief. (Resp't Exs. 112, 113.) In his counseled amended PCR petition, Petitioner raised only two claims. In his first claim for relief, Petitioner alleged that Taylor had provided ineffective assistance of counsel when she failed to renew the motions to controvert and suppress, and when she pressured him to resolve the case by plea negotiation. (Resp't Ex. 113 at 4–9.) In his second claim for relief, Petitioner alleged that his guilty pleas were not knowingly, voluntarily, or intelligently made. (*Id.* at 9–10.) Specifically, Petitioner alleged that "[a]s a result of the representations of his trial counsel, Taylor, . . . and her failure to disclose material information to petitioner concerning the legal consequences of entering guilty pleas to Counts 1, 2, 3, 11, 12, 13, and 16, petitioner waived his state and federal constitutional rights to a trial by jury and abandoned

his ability to litigate his suppression claims in the federal court system when he would not otherwise have done so." (*Id.*)

The PCR court held an evidentiary hearing on April 11, 2017. (Resp't Ex. 159.) Petitioner provided several exhibits for the PCR court's review, and testified on his own behalf. Notably, Smith testified that he had wanted to further litigate the motions to controvert and suppress on remand to address new case law handed down after his convictions. (*Id.* at 8–9.) When asked whether he still would have entered the guilty pleas if he "had known that [he] would be essentially barred from further litigating [the suppression] issues based on [the] guilty pleas," Petitioner replied, "Not at all, no." (*Id.* at 16.)

In a written decision, the PCR court denied relief on both claims. (Resp't Ex. 160 at 5.) Specifically, the PCR court determined that Petitioner failed to establish that Taylor was ineffective for failing to renew the motions to controvert and suppress because the intervening case law on which he hoped to relitigate the motions did not apply, and there otherwise was "no evidence that a new motion to suppress and controvert would have been any more successful than the motions that were previously filed, argued and denied by the trial cou[r]t and the Court of Appeals." (*Id.* at 5.) With respect to Petitioner's claim that his guilty pleas were not freely, knowingly, and intelligently given, the PCR court held as follows:

> Petitioner has failed to prove that his trial guilty plea was not freely, knowingly and intelligently entered. The record reflects that trial counsel was able to secure a plea agreement that reduced the Petitioner's sentence by [half]. During the colloquy with the judge, the Petitioner stated and the judge found that the plea was being entered freely, intelligently and voluntarily. Petitioner expressly indicated both in writing and orally that he understood the entry of the guilty plea would prevent further appeal on any aspect of his case other than legality of the sentence imposed. The Petitioner's motion to suppress and controvert had already been denied at all levels of the Oregon court system. Petitioner has also failed to prove that he would have rejected the plea offer from the state and proceeded to trial but for his trial attorney's inadequate effort and advice.

PAGE 9 – OPINION AND ORDER

(*Id.* at 5–6.) In addition, the PCR court expressly found that Petitioner's testimony at the PCR trial was "contrary to the record in the trial court" and not credible. (*Id.* at 5.)

Petitioner appealed, presenting a single question for review:

> In the circumstances of this case, was trial counsel ineffective and inadequate for failing to file a motion to suppress the evidence found on petitioner's computers?

(Resp't Ex. 161 at 8.) The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review. (Resp't Exs. 164, 165.)

## V. Federal Habeas Proceedings

On November 19, 2019, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus in this Court. Appointed counsel filed an Amended Petition for Writ of Habeas Corpus on September 30, 2020, alleging a single ground for relief:

> Ground I: Petitioner's guilty plea was not knowing, voluntary and intelligent because he was denied effective assistance of counsel in violation of his Sixth and Fourteenth Amendment rights when his trial attorney at the remand proceedings, Suzanne Taylor, failed to advise Petitioner regarding available challenges to the indictment. It is the Petitioner's position that government witness Special Agent Micah Persons provided false and/or misleading statements to the grand jury; that a motion to compel grand jury testimony notes would have revealed these misstatements; and that the misstatements would have formed a basis for a meritorious challenge to the indictment. Representative of those misstatements are the following: Special Agent Persons inaccurately represented the source of his information about Mr. Smith; Special Agent Persons inaccurately stated that Mr. Smith had been identified as a child pornography consumer; and Special Agent Persons inaccurately stated that PayPal record showed that Mr. Smith made a completed transaction with a child pornography website. The petitioner incorporates here the misstatements identified in the following Exhibits formally filed by Respondent in this case: Respondent's Exhibit 133, pages 7–15; Respondent's Exhibit 138, page 5–28.

(Am. Pet. at 3–4.) Respondent urges the Court to deny habeas relief, arguing that Petitioner's sole ground for relief asserted in the amended petition is procedurally defaulted, that he cannot establish cause and prejudice to excuse the default, and that his claim fails on the merits. (Resp't Resp. to Pet. (ECF No. 32), at 2.)

# DISCUSSION

I. **Exhaustion and Procedural Default**

   A. **Legal Standards**

A habeas petitioner generally must exhaust all remedies available in state court, either on direct appeal or through collateral proceedings, before a federal court may consider granting habeas relief. *See* 28 U.S.C. § 2254(b)(1)(A) (instructing that a court may not issue a writ of habeas corpus on behalf of an individual in state custody unless "the applicant has exhausted the remedies available in the courts of the State"); *see also Smith v. Baldwin*, 510 F.3d 1127, 1137 (9th Cir. 2007) (noting that a prisoner must first exhaust available remedies before a federal court may consider the merits of a habeas petition). Generally, a petitioner satisfies the exhaustion requirement "by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'afford[ing] the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore*, 386 F.3d 896, 915–16 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257 (1986)) (alteration in original); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (holding that "[b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete rounds of the state's established appellate review process").

If a petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, the claims have not been fairly presented to the state courts and are therefore not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In this respect, a petitioner is deemed to have "procedurally defaulted"

his claim if he failed to comply with a state procedural rule, or failed to raise the claim at the state level at all. *Carpenter*, 529 U.S. 446, 451(2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). An individual in state custody is barred from raising procedurally defaulted claims in federal court unless he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to consider the claims will result in fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

**B.     Analysis**

**1.     Ground One is Procedurally Defaulted**

Respondent argues that Petitioner appealed only the first claim presented to the PCR court, did not challenge the knowing, intelligent, and voluntary nature of his plea as alleged in his second claim for relief, and thus failed to fairly present his claim to the state's highest court on post-conviction review. (Resp't Resp. at 10.) Because Petitioner can no longer assert his claim in state court, Respondent argues that Ground One is procedurally defaulted. (*Id.*) Petitioner concedes that he failed fairly to present his claim that Taylor was ineffective when she failed to advise him regarding available challenges to the indictment. (Pet'r's Br. in Supp. of Pet. (ECF NO. 34), at 15.)

Fair presentation required Petitioner to raise Ground One to the Oregon Supreme Court in a procedural context in which it would assess the claim's merits. Petitioner did not include Ground One in his petition for review to the Oregon Supreme Court, and thus the highest state court did not have an opportunity to pass on the merits of his claim. (Resp't Ex. 163.) Accordingly, Petitioner failed to fairly present Ground One, and because he can no longer do so, it is procedurally defaulted. *See* OR. REV. STAT. § 138.510(3) (setting forth a two-year limitation period in which to file for postconviction relief); OR. REV. STAT § 138.550(3) (instructing that all grounds for relief

must be asserted in the original or amended postconviction relief petition unless the grounds could not reasonably have been raised).

> **2. Petitioner has not Established Cause and Prejudice to Excuse the Default**

Petitioner argues that the ineffective assistance of PCR counsel excuses his procedural default under *Martinez v. Ryan*, 566 U.S. 1 (2012). Specifically, Petitioner alleges PCR counsel "performed deficiently in failing to raise a claim of ineffective assistance of counsel based on [Taylor's] inadequate advice regarding available challenges to the indictment." (Pet'r's Br. at 15.)

The ineffective assistance of post-conviction counsel generally does not constitute "cause" to excuse a procedural default. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (holding that because there is no constitutional right to counsel in post-conviction proceedings, a petitioner "must 'bear the risk of attorney error that results in a procedural default'") (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). However, the Supreme Court recognized a narrow exception to this general rule in *Martinez*: "Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 9; *see also Detrich v. Ryan*, 740 F.3d 1237, 1244 (9th Cir. 2013) (noting that under *Martinez*, "a procedural default by state PCR counsel in failing to raise trial-counsel IAC is excused if there is 'cause' for the default"). This narrow exception applies in Oregon where, by law, ineffective assistance claims must be raised and addressed in a PCR proceeding. *See State v. Robinson*, 25 Or. App. 675, 550 P.2d 758 (1976) (holding ineffective-assistance claims are "properly resolved only in a postconviction proceeding"); *Sexton v. Cozner*,

679 F.3d 1150, 1159 (9th Cir. 2012) (acknowledging that Oregon requires claims for ineffective assistance to be raised in a collateral proceeding).

To establish cause to excuse procedural default under *Martinez*, Petitioner must show first that his underlying claim of ineffective assistance of trial counsel is substantial insofar as it has "some merit." *Martinez*, 566 U.S. at 14. Next, he must demonstrate that his PCR attorney was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), for failing to raise the claim. "[T]o fulfill this requirement, a petition must not only show that PCR counsel performed deficiently, but also that this prejudiced petitioner, i.e. that there was a reasonable probability that, absent the deficient performance, the result of the post-conviction proceedings would have been different." *Runningeagle v. Ryan*, 825 F.3d 970, 982 (9th Cir. 2017). Such a finding would necessarily require the Court to conclude that there is a reasonable probability that the trial-level ineffective assistance claim would have succeeded had it been raised. *Id.*

Petitioner has not established that his underlying ineffective assistance claim is "substantial," that PCR counsel's performance fell below an objective standard of reasonableness in declining to assert that claim in the amended petition, or that Petitioner was prejudiced as a result. Petitioner argues that Agent Persons made "false and misleading statements" to the grand jury — specifically, the alleged inaccuracies in Agent Persons' search warrant affidavit as outlined in McCrea's objections in the first trial proceedings — and then asserts, in conclusory fashion, that such statements "would have formed a meritorious challenge the indictment[,]" and that "[h]ad Taylor advised him about the availability of a motion to quash the indictment, it is more than likely [he] would not have accepted the State's plea offer and would not have entered into the plea agreement." (Pet'r's Br. at 14.) Judge Ashcroft, Judge Penn, the Oregon Court of Appeals, and the Oregon Supreme Court, however, all rejected McCrea's objections in denying Petitioner's

PAGE 14 – OPINION AND ORDER

challenges to the search warrant, and both Judge Ashcroft and Judge Penn expressly denied finding any untruthfulness or bad faith on the part of Agent Persons. (*See* Resp't Ex. 140 at 1; Tr. 13–14.) Petitioner does not rebut these findings,[3] nor does he explain how the indictment would be subject to a meritorious challenge in light of these facts. *See* 28 U.S.C. § 2254(e)(1) (instructing that in a habeas proceeding, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence"). Petitioner therefore cannot establish that the same allegedly false or misleading statements raised by McCrea and rejected at every level of review in the Oregon courts would support a viable challenge to the indictment, and thus this Court cannot conclude that Taylor's failure to advise Petitioner as to the availability of such a challenge fell below an objective standard of reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688–689 (1984) (instructing that a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness[,]" and that the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy")

Moreover, because Petitioner has not established that his ineffective assistance of trial counsel claim is "substantial," PCR counsel "could not have been ineffective for failing to raise the ineffective assistance of counsel claim[s] in state court." *See Sexton*, 679 F.3d at 1161 (holding PCR counsel could not have been ineffective for failing to raise IAC claims where trial counsel was not ineffective). Even if PCR counsel's failure to raise the ineffectiveness claims constituted

---

[3] Similarly, Petitioner does not rebut the PCR court's findings that he was not credible, and that he failed to establish that he would have rejected a plea and would have insisted on going to trial but for his attorney's inadequate advice and efforts. (Resp't Ex. 160 at 5–6.)

deficient performance under *Strickland*, the PCR court denied a similar ineffectiveness claim based on Taylor's failure to renew the motions to controvert and suppress based on Agent Persons' alleged false statements, specifically finding that there was no evidence such motions would have been successful. The PCR court's resolution of this parallel issue demonstrates that the outcome of the PCR proceedings likely would not have been different. Accordingly, Petitioner has failed to carry his burden to establish that his procedural default is excused under *Martinez*.

## II. Evidentiary Hearing

Petitioner seeks an evidentiary hearing to demonstrate cause and prejudice under *Martinez* to excuse the procedural default of Ground One. Based on the foregoing, however, an evidentiary hearing is neither necessary nor in the interests of judicial economy. *See Schriro v Landrigan*, 550 U.S. 465, 474 (2007) (where the record in the case precludes habeas relief, a district court is not required to hold an evidentiary hearing); *see also Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir.1998) (evidentiary hearing not required on issues that can be resolved by reference to state court record). Accordingly, Petitioner's request for an evidentiary hearing is denied.

///

///

///

///

///

///

///

///

///

## CONCLUSION

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus (ECF No. 31) is DENIED, and this proceeding is DISMISSED, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this  6th  day of July, 2021.

*Karin J. Immergut*
Karin J. Immergut
United States District Judge